*892 POSNER, Chief Judge.
In the ordinary course of bankruptcy, the debtor’s assets are applied to the payment of his debts and, even though the assets will usually be insufficient to pay those debts in full, he will emerge from bankruptcy with the unpaid balance discharged so that he can start afresh with no overhang of debt. Some types of debt, however, are not dischargeable, and among them- are debts “for money,- property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor’s or an insider’s financial condition.” 11 U.S.C. § 523(a)(2)(A). The most common type of fraud involves a deliberate misrepresentation or, what amounts to the same thing, a deliberately misleading omission. E.g., In re Docteroff, 133 F.3d 210, 216 (3d Cir.1997). The question this appeal presents is whether, as the bankruptcy court and district court ruled, this is the only type of fraud that comes within the exception for “actual fraud.” We have not been able to find any reported appellate cases that deal with this question.
Because the creditor’s case was dismissed for failure to state a claim, we must take the allegations of his complaint as true. In 1989 McClellan, the creditor, sold his business assets, consisting of ice-making machinery, to the debtor’s brother for $200,000, payable in installments. McClellan retained, but did not perfect, a security interest in the machinery. The brother defaulted, owing McClellan more than $100,000. McClellan sued the brother in an Illinois state court, seeking among other things an injunction against the brother’s transferring the machinery. With the suit pending, the brother “sold” the machinery to his sister, the debtor. The bill of sale recites the price as $10, and there is no reason to believe that it was more; we may assume therefore that it was a gratuitous transfer. The sister knew about the suit and in accepting the transfer of the machinery was colluding with her brother to thwart McClellan’s collection of the debt that her brother owed. him. She turned around and sold the machinery for $160,000 — and she’s not telling anyone what has happened to that money.
The sale took place in 1994 and the following year McClellan added-the sister as a defendant in his state court action, claiming that her brother’s transfer of the machinery to her had been a fraudulent conveyance. 740 ILCS 160/5. Two years later, with the state court suit still pending, the sister filed for bankruptcy under Chapter 7. Fearing lest her debt to him be discharged at the conclusion of the bankruptcy proceeding, McClellan filed an adversary proceeding against her seeking to recover the debt that he alleged she owed him as the recipient of a fraudulent transfer of the assets that secured her brother’s debt. The bankruptcy court dismissed his complaint on the ground that the debt was dischargeable, and the district court affirmed because “the Supreme Court recently scoffed at the idea that a debt could be nondischarg[e]able under the fraud exception of § 523(a)(2)(A) without a showing of material misrepresentation and reliance on the statement. See Field v. Mans, 516 U.S. 59, 68, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).” Actually Field has nothing to do with this case. The fraud there took the form of a misrepresentation, and the only issue was the nature of the reliance that a plaintiff must show to prove fraud in such a case. Nothing in the Supreme Court’s opinion suggests that misrepresentation is the only type of fraud that can give rise to a debt that is not dischargeable under section 523(a)(2)(A). No other type of fraud was alleged in the case or discussed in the opinion.
Plenty of cases, it is true, assume that fraud equals misrepresentation, but like Field they are cases in which the only fraud charged was misrepresentation. In re Maurice, 21 F.3d 767, 773-74 (7th Cir.1994); In re Ettell, 188 F.3d 1141, 1144 (9th Cir.1999); In re Biondo, 180 F.3d 126, *893 133-34 (4th Cir.1999); Sanford Institution for Savings v. Gallo, 156 F.3d 71, 74-76 (1st Cir.1998); Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir.1997); In re Hashemi, 104 F.3d 1122 (9th Cir.1996); In re Apte, 96 F.3d 1319, 1322 (9th Cir.1996); In re Young, 91 F.3d 1367, 1373 (10th Cir.1996); In re Eashai, 87 F.3d 1082, 1086-89 (9th Cir.1996); In re Arm, 87 F.3d 1046 (9th Cir.1996); In re Johannessen, 76 F.3d 347, 350 (11th Cir.1996); In re Vann, 67 F.3d 277, 280 (11th Cir.1995). Most frauds do involve misrepresentation and so In re Biondo, for example, describes the fraud involved there as “the tort of fraudulent misrepresentation.” 180 F.3d at 134; see also Field v. Mans, supra, 516 U.S. at 70, 116 S.Ct. 437; In re Maurice, supra, 21 F.3d at 773-74. But section 523(a)(2)(A) is not limited to “fraudulent misrepresentation.” Although Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 472-74, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), held that the concept of fraud in the SEC’s Rule 10b-5 is limited to misrepresentation and therefore did not reach the nonrepresentational breach of fiduciary duty — a squeeze out of minority shareholders — charged in that case, there are no such holdings with regard to the concept of “actual fraud” in 11 U.S.C. § 523(a)(2)(A). There could not be; for by distinguishing between “a false representation” and “actual fraud,” the statute makes clear that actual fraud is broader than misrepresentation. Collier’s treatise, while assuming along with the cases that we have cited that “actual fraud” involves a misrepresentation, defines the term much more broadly — as “any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another,” 4 Collier on Bankruptcy ¶ 523.08[1][e], p. 523-45 (15th ed., Lawrence P. King ed., 2000) — which is a good description of what the debtor is alleged to have done here.
Pressed at argument, her lawyer was unable to suggest any reason why the type of fraud presented by the allegations of McClellan’s complaint should be treated differently from other types of fraud. The two-step routine that McClellan alleges and' that we must take as true — in which Debtor A transfers valuable property to B for nothing in order to keep it out of the hands of A’s creditor and B then sells the property and declares bankruptcy in an effort to shield herself from liability for having colluded with A to defeat the rights of A’s creditor — is as blatant an abuse of the Bankruptcy Code as we can imagine. It turns bankruptcy into an engine for fraud. Though cases often say that exclusions from dischargeability should be narrowly construed, Gleason v. Thaw, 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915); Palmacci v. Umpierrez, supra, 121 F.3d at 786, we have emphasized that they “serve vital functions.” In re Mayer, 51 F.3d 670, 674 (7th Cir.1995). “Congress concluded that preventing fraud is more important than letting defrauders start over with a clean slate, and we must respect that judgment.” Id.
No learned inquiry into the history of fraud is necessary to establish that it is not limited to misrepresentations and misleading omissions. “Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.” Stapleton v. Holt, 207 Okla. 443, 250 P.2d 451, 453-54 (Okla.1952). Breaches of fiduciary obligation are commonly punished as frauds even when there is no misrepresentation or misleading omission. E.g., Doner v. Phoenix Joint Stock Land Bank, 381 Ill. 106, 45 N.E.2d 20, 24 (Ill.1942); Conway v. Conners, 101 Ill.App.3d 121, 56 Ill.Dec. 610, 427 N.E.2d 1015, 1020 (Ill.App.1981). A separate provision in section 523 excludes from discharge debts arising from *894 fraud “in a fiduciary capacity,” 11 U.S.C. § 523(a)(4); it would be shocking if that exclusion were limited to misrepresentations by fiduciaries. And, coming to this case, when a debtor transfers property to a third party without adequate consideration, the transfer is deemed a fraud on the debtor’s creditors. 740 ILCS 160/5-6; Scholes v. Lehmann, 56 F.3d 750 (7th Cir.1995). The fraud may be either constructive or actual. (Sometimes the terms “fraud in law” and “fraud in fact” are used.) It is constructive if the only evidence of it is the inadequacy of the consideration; it is actual if the debtor intended by the transfer to hinder his creditors. See, e.g., id. at 757; In re Liquidation of MedCare HMO, Inc., 294 Ill.App.3d 42, 228 Ill.Dec. 502, 689 N.E.2d 374, 380-81 (Ill.App.1997); Regan v. Ivanelli, 246 Ill. App.3d 798, 187 Ill.Dec. 351, 617 N.E.2d 808, 814 (Ill.App.1993). The fraud exception to the dischargeability of debts in bankruptcy does not reach constructive frauds, only actual ones, but the allegation here is that the transfer involved an actual fraud; the debtor’s brother was deliberately attempting to thwart McClellan’s effort to collect the debt due him. And while it is true that McClellan did not rely on the brother’s retaining the security for the loan, reliance is relevant only when a fraud takes the form of a misrepresentation. And that, as we have emphasized, is not the only form that fraud can take or the only form that makes a debt nondischargeable, given that debts created by misrepresentations constitute a separate category of nondischargeable debts.
The distinction between actual and constructive fraud is the key to this case in two distinct senses. First. To transfer property for less than adequate consideration may be desperate, foolish, or imprudent, and the receipt of such a transfer a pure windfall, but neither the transfer nor the receipt is in and of itself dishonest, and so neither is an appropriate ground for refusing to allow the debtor to discharge the debt arising from the trans-fer and thus to get on with his life without the debt hanging over his head. The situation is entirely different, and the debtor’s equities and argument for discharge much weaker, when the debtor is guilty of intent to defraud. The purpose of section 523(a)(2)(A) in confining nondischargeability to actual fraud is merely to recognize this difference and thus to exclude constructive fraud. See Neal v. Clark, 95 U.S. (5 Otto) 704, 709, 24 L.Ed. 586 (1877); In re Anastas, 94 F.3d 1280, 1286 (9th Cir.1996); 4 Collier on Bankruptcy, supra, ¶ 523.08[1][e], p. 523-45. This purpose is unrelated to whether the intent to defraud was implemented by a misrepresentation or by some other improper means.
Second. The distinction between actual and constructive fraud answers the objection that section 523(a)(2)(A) is intended to reach fraud in the inception of a debt — fraud that created the debt — whereas the law of fraudulent conveyance is merely a method of facilitating the collection of a previous debt that need not itself have been created by a fraud. The first point is correct; the second point is correct in a case of a constructively fraudulent conveyance; but when actual fraud is involved, the first point is satisfied. To explain: when a conveyance is merely constructively fraudulent, in the sense that having transferred the property that secured the debt without obtaining adequate consideration the debtor is now unable to pay his creditor, the transferee is not guilty of an actual fraud against the creditor and so the creditor cannot use section 523(a)(2)(A) to prevent the transferee from discharging the debt in bankruptcy. And so in this case, if though the debtor’s brother intended to thwart McClellan and was thus committing actual fraud, his sister was innocent — if she had no intention of hindering any creditor — the debt that McClellan is seeking to collect from her would not have been obtained by her by actual fraud. But she is alleged to have been a full and equal participant in her brother’s fraud, to have been in effect his *895 accomplice, as in Cenco v. Seidman & Seidman, 686 F.2d 449, 452-453 (7th Cir.1982). The debt that McClellan is seeking to collect from her (and prevent her from discharging) arises by operation of law from her fraud. That debt arose not when her brother borrowed money from McClellan but when she prevented McClellan from collecting from the brother the money the brother owed him.
The Bankruptcy Code defines “debt” very broadly, as “liability on a claim,” 11 U.S.C. § 101(12), and “claim” very broadly, as any “right to payment,” whether liquidated or unliquidated, disputed or undisputed, legal or equitable. § 101(5); see generally Johnson v. Home State Bank, 501 U.S. 78, 83-84 and n. 5, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). A debt need not, therefore, arise from a loan. The brother’s original debt to McClellan arose from a loan, but is not the debt at issue here. The debt at issue here is the debt that the sister incurred to McClellan by committing a fraud against him. Because it was an actual fraud, the debt that it gave rise to is not dischargeable.
This result would be paradoxical if it meant that while the sister could not discharge her fraud debt in bankruptcy, the brother could have discharged the same debt had he declared bankruptcy. It does not mean this. What is true is that if he had merely defaulted on his original debt to McClellan, which so far as appears was not created by a fraud, and later declared bankruptcy, that debt would have been dischargeable. If, however, he had rendered the debt uncollectible by making an actually fraudulent conveyance of the property that secured it, his actual fraud would give rise to a new debt, nondischargeable because created by fraud, just as in the case of the sister, his accomplice in fraud. But it would be a new debt only to the extent of the value of the security. that he conveyed, for that would be the only debt created by the fraud itself. For example, if he owed McClellan $100,000 and defaulted after having transferred to his sister property securing the debt worth $10,000, he would be entitled to discharge $90,000 of the debt, for only the $10,000 was a debt created by fraud.
Another feature of the case, however, may seem to tell against our interpretation of section 523(a)(2)(A). We have been speaking of the nondischargeability of a debt that is created by fraud, but the actual language of the statute is “any debt ... for money, property, [or] services ... to the extent obtained by ... actual fraud.” The words “obtained by” go with “money, property, [or] services,” not with “debt.” E.g., In re Mones, 169 B.R. 246, 251 n. 2 (Bankr.D.Colo.1994). A debt is not something you obtain; it is something you incur as a consequence of having obtained money or something else of value from another person (the creditor). The sister obtained, for $10, machinery that she was able to sell for $160,000. It is true that she didn’t obtain this money by a fraud against her brother. They were acting in cahoots. But the statute does not require that the transferor be the victim of the fraud, but only that money, property, or services be obtained by fraud, and but for fraud the sister would not have obtained a $160,000 windfall. What is more, the property, the machinery, was not really the brother’s to give away; he was not the equitable owner; equity would have imposed a constructive trust for McClellan’s benefit on the machinery wrongfully conveyed by the brother. Wal-Mart Stores, Inc. Associates Health & Welfare Plan v. Wells, 213 F.3d 398 (7th Cir.2000); Clair v. Harris Trust & Savings Bank, 190 F.3d 495, 498-99 (7th Cir.1999); Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378 (1919) (Cardozo, J.); 1 Dan B. Dobbs, Law of Remedies: Damages — Equity—Restitution § 4.3(2) (2d ed.1993). Stated differently, the brother gave his sister McClellan’s security interest, McClellan’s property, which means that she was taking property from — defrauding—McClellan directly.
*896 For completeness we note that it might also be possible to shoehorn the facts of this case into another provision of section 523, the provision that excludes from discharge debts arising from “willful and malicious injury by the debtor to another entity or to the property of another entity.” 11 U.S.C. § 523(a)(6); see In re Bammer, 131 F.3d 788 (9th Cir.1997) (en banc). But why shoehorn? What happened here was fraud — though this is on the assumption, of course, that McClellan can. prove the allegations of his complaint. If they are true, however, he has stated a claim. He is entitled to try to prove that they are true.
REVERSED And RemaNded.