**In re Ronald D. GARD, Debtor.**

**Metropolitan Real Estate Corp., Plaintiff,**

v.

**Ronald D. Gard, Defendant.**

**Bankruptcy No. 01–40721.
Adversary No. 01–4068.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

June 2, 2003.

Cy Gerde, Lafayette, IN, for Debtor.

Jay T. Seeger, Lafayette, IN, for Plaintiff.

### DECISION

ROBERT E. GRANT, Bankruptcy Judge.

Although § 523(a)(2)(A) of the United States Bankruptcy Code specifically excepts from the scope of a debtor's discharge debts arising out of "false pre-

tenses, a false representation or actual fraud," its scope is not limited to frauds involving misrepresentations or misleading omissions. *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir.2000). Instead, it extends to " 'any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another' ..." *Id.* (citing 4 Collier on Bankruptcy, para. 523.08[1][e](15th edition)). This is such a case.

Plaintiff holds a judgment against the debtor for $170,000.00, representing treble damages and attorney fees awarded as a result of the debtor's issuance of $50,000.00 in checks which were dishonored due to non-sufficient funds. These checks were issued in connection with the defendant's purchase of real estate from a third party. Plaintiff represented the seller and the defendant had agreed to purchase the property pursuant to a land sale contract which required a $50,000.00 down-payment. The checks in question represent the down-payment. The first, which is in the sum of $5,000.00, was tendered in January of 1998 and represents the earnest money defendant deposited when he first submitted his offer to purchase the property. The second, which is dated June 1, 1998, is in the sum of $45,000.00 and represents the balance of the defendant's down-payment. Although this check is dated June 1, it was actually issued on May 29 when the real estate closing occurred. The defendant advised plaintiff that he was post-dating the check and the plaintiff agreed that he could do so. As a result of having received these checks, the plaintiff, who had to disperse the down-payment, issued his own check—also post-dated to June 1—in the sum of $50,000.00 to his client. Following the closing, the plaintiff deposited both of the defendant's checks—the $5,000.00 check issued in January and the $45,000.00 check dated June 1—into his account. Unfortunately, when they were presented for payment at the institution upon which they were drawn, they were dishonored because the defendant did not have sufficient funds in the account with which to pay them. Equally unfortunate, is the fact that the $50,000.00 check the plaintiff issued to his client—which disbursed the down-payment plaintiff had supposedly received from the defendant—did clear the plaintiff's account.

Defendant argues that because the larger check was post-dated, it represents nothing more than a promissory note under Indiana law and is not a check. This, he contends, together with the fact that he chose not to take possession of the property on June 1 as the contract permitted him to do, indicates that he lacked the intent to deceive which is a necessary element of the fraud condemned by § 523(a)(2). Defendant also maintains that since he did not take possession, he did not receive any money, property or services; therefore, another element of § 523(a)(2) is claimed to be missing. Finally, the defendant appears to argue that the plaintiff—who had many years of experience in the real estate business—had no business disbursing money to his client on the strength of the personal checks he had received from the defendant.

The Seventh Circuit's decision in *McClellan*—that a debt may be held nondischargeable as a result of fraud even though the debtor made no representations to the plaintiff—ends the debate, at least in this circuit, as to whether a debt represented by an NSF check can be nondischargeable. *See e.g., In re Miller*, 112 B.R. 937, 940 note 1 (Bankr.N.D.Ind.1989). Rather than looking for representations which might have been made, *McClellan* requires the court to focus upon the debtor's intent. *McClellan*, 217 F.3d at 893–

894. So long as the debtor acted with the "intent to defraud" it does not matter whether the fraud "was implemented by a misrepresentation or by some other improper means." *McClellan*, 217 F.3d at 894.

■ Based upon the evidence presented at trial, the court finds that the debtor acted with the intent to defraud when he proceeded to close the purchase of the property based upon the two checks he had tendered to the plaintiff. The debtor knew those checks would not be honored when they were presented to the institution upon which they were drawn, he knew that he did not have the resources to make those checks good and took absolutely no action to do so. Consequently, the court finds that the debtor acted with the requisite intent to defraud when he allowed the transaction to proceed. That he may have subsequently had a change of heart which—if we accept his testimony—persuaded him not to take possession of the property on June 1, does not negate the intent with which he acted several days earlier. The court finds, however, that defendant's failure to take possession was not so much the product of a change of heart and a desire to avoid accepting the benefits of his fraudulent conduct, but rather a case of buyer's remorse or simple laziness in not getting around to doing so. Had the defendant truly experienced a change of heart, he would not have passively sat back and done nothing. Instead, he would have affirmatively gone to the plaintiff and advised him of the situation, so that the plaintiff could have taken steps to minimize his own loss as a result of the worthless checks he had received from the defendant.

■ The defendant seems to challenge the reasonableness of the plaintiff's actions by arguing that it is ludicrous to think that he could have defrauded an experienced business man. While the court must agree that the plaintiff's actions which led to his loss—issuing a check to his own client before he had satisfied himself that the defendant's checks had cleared—were not reasonable ones and, thus, would not rise to the level of reasonable reliance, that type of reliance is not required to prove nondischargeability under § 523(a)(2)(A). In *Field v. Mans*, 516 U.S. 59, 74–75 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995), the Supreme Court held "that § 523(a)(2)(A) requires justifiable, but not reasonable, reliance." Furthermore, since *Field v. Mans*, the Seventh Circuit has concluded that "reliance is relevant only when a fraud takes the form of misrepresentation." *McClellan*, 217 F.3d at 894. Consequently, a debt may be excepted from discharge under § 523(a)(2)(A) even though the plaintiff did not rely at all upon the debtor's actions. *Id.* As a result, the court does not need to concern itself with issues concerning the nature or the quality of plaintiff's reliance.

■ Although the court does not need to concern itself with plaintiff's reliance, it would note that, because contributory negligence is not a defense to fraud which is an intentional tort, justifiable reliance does not require that the plaintiff's conduct conform to the standard of a reasonable man. *Field v. Mans*, 116 S.Ct. at 444. One may justifiably rely upon a representation even though its falsity could have been determined had an investigation been made. *Id.* It is only if the falsity of the representation would be patent or apparent from a cursory glance—in other words, believing what obviously is not so—that reliance is not justifiable. *Id.* Under this standard, plaintiff's reliance, while certainly not reasonable, may well have been justifiable.

■ Defendant's final argument is that he did not obtain anything as a result

of his fraud. This appears to be based upon the fact that he chose not to take possession of the real estate on June 1 as the purchase agreement contemplated. *McClellan* forecloses this argument. "[T]he statute does not require that the transferor be the victim of the fraud, but only that money, property or services be obtained by fraud ..." *McClellan*, 217 F.3d at 895. Here, the defendant obtained an interest in the real estate which was being sold through the plaintiff as a result of the closing of the transaction. But for defendant's issuance of worthless checks in satisfaction of the down-payment, the closing would never have been completed and he would never have obtained that interest. Thus, although the seller was not the victim of defendant's fraud (it was the seller's agent who suffered the consequences), the defendant would never have obtained an interest in the property without issuing those checks. What defendant might subsequently have chosen to do with that interest does not change the fact that he obtained it by fraud. The final issue is the extent to which debtor's obligation to the plaintiff is nondischargeable. That obligation is represented by a judgment for treble damages and attorney fees. This precise question was the subject of this court's decision in *Matter of Clifton*, 1996 WL 931683 (Bankr.N.D.Ind.1996), aff'd *Anthony Wayne Credit Adjusters v. Clifton*, N.D. Ind. 1:96CV382 (Dec. 13, 1996). There the court recognized that, although § 523(a)(2) excepts from the scope of a debtor's discharge any debt arising out of the debtor's fraudulent conduct, a maker's liability for enhanced damages "as a result of an NSF check is not an inseparable part of the obligation represented by the dishonored instrument. It does not arise at the same time or as a result of the same conduct that created the underlying obligation." *Clifton*, 1996 WL 931683 at *3. Instead, that liability "is due to the mak-

er's failure to fully pay [the check] within 10 days of the holder giving notice of dishonor." *Id.* Consequently, in *Clifton* the court concluded that a debtor's obligation to pay the enhanced damages arising out of a dishonored check could be discharged, even though the obligation represented by the underlying instrument could not. This conclusion was entirely consistent with the governing law of the circuit as it existed at that time. *See, Matter of McFarland,* 84 F.3d 943 (7th Cir.1996); *Matter of Mayer,* 51 F.3d 670 (7th Cir.1995). Since that time, the Supreme Court has weighed in on the issue. *See, Cohen v. de la Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). There, like in *McFarland* and *Mayer,* the same conduct that gave rise to the debtor's liability to the plaintiff was also the basis for the plaintiff's right to recover enhanced damages. The Court did not deal with a situation where, as here, the right to enhanced damages comes into existence as a result of conduct that is separate from and independent of the debtor's fraudulent act. Thus, while this court is in wholehearted agreement with the principle that § 523(a)(2) excepts from the scope of discharge any debt arising out of a debtor's fraudulent conduct, it must recognize that under Indiana law the liability for enhanced damages and attorney fees as a result of an NSF check does not arise out of the defendant's underlying fraudulent conduct. Instead, it arises out of the failure to take certain actions after having been given a notice by the holder of the dishonored instrument. As a result, the distinctions which the court made in *Clifton* and the conclusions which it drew from them continue to be valid. *Matter of Clifton,* 1996 WL 931683 *3. Consequently, the defendant's obligation to the plaintiff, represented by the judgment of the Tippecanoe Superior Court issued in cause number 79D01–9910–CP–375 is nondischarge-

able to the extent of $50,000.00 together with post-judgment interest thereon.

Judgment will be entered accordingly.