### In the Matter of Hyun Ah LEE, Debtor.

### Michael P. Kenna, Plaintiff,

### v.

### Hyun Ah Lee, Defendant.

### Bankruptcy No. 02 B 43574.
### Adversary No. 03 A 00717.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Jan. 22, 2004.

---

Carol A. Ahern, Esq., Jones Day, Chicago, IL, for Plaintiff.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

JACK B. SCHMETTERER,
Bankruptcy Judge.

This Adversary Complaint relates to the case filed by Debtor/Defendant Hyun Ah Lee ("Debtor" or "Lee") under Chapter 7 of the Bankruptcy Code. She owed $6,400 to Plaintiff Michael Kenna ("Plaintiff" or "Kenna") who here seeks to bar dischargeability of that debt under 11 U.S.C. § 523(A)(2) and § 523(A)(6).

Following trial, the following findings of Fact and Conclusions of Law are made and entered and judgment will be separately entered in favor of Defendant.

### *FINDINGS OF FACT*

1. On November 6, 2002, the Debtor filed her Petition for Chapter 7 Bankruptcy.

2. On December 17, 2002, Plaintiff being then unaware of the Debtor's bankruptcy filing, wrote a letter to the Debtor demanding payment of a debt allegedly owing to Plaintiff from Debtor, then claimed in the amount of $13,500.

3. Shortly thereafter, on January 2, 2003, the Debtor moved to Amend her Petition for Bankruptcy to add Plaintiff's debt to the list of debts she seeks to discharge through her bankruptcy filing. Plaintiff's Amended Petition seeks to discharge the total debt to Plaintiff of $13,500. However, in his Complaint Plaintiff only objects to dischargeability of $6,400 of the $13,500.

4. For nearly three years Lee and Kenna lived together in a relationship closely resembling a loving and trusting marriage without benefit of marriage license. They each had good jobs and income, and they shared their lives, space, affection, and finances. Kenna admittedly allowed her to use one credit card on which they both charged up large expenses for her and also his clothing and other expenses. A second credit card in his

name (used to accrue the debt in issue here) was used by her to charge up other large expenses, including clothing and other purchases for her as well as gifts for his family. She says that he gave her possession of and allowed her to use the second card. He says that he did not give possession of the card to her, nor allowed her to charge on this second card. However, as each bill on that second card came to the apartment where they lived together, he followed a practice of giving those bills on that card to her to check over and make payments on without him scrutinizing the bills. Clearly, he knew that she was using that card to charge for her purchases. Since he did not check the bills, he thereby allowed her to charge on that card as she pleased, just as she contends. Only after he broke off the relationship with Lee (to join with another woman who he eventually married), did he contend that she had no permission to incur certain specified charges on the credit card in issue. It is only as to those certain charges that he now contends that she defrauded him by charging without his consent.

Did she take that card without his consent as he says or did she receive the card from him for use with reasonable understanding that she had the same permission to its use that she had with the first card? The finding here is that he has failed to establish by preponderance of evidence that she lacked his consent to use the card. Lee and Kenna shared their earned income throughout their relationship, sharing living expenses and regularly commingling income. Kenna repeatedly gave Lee sums of money for shopping, trips to Paris, France, and costs of living. The charges that Lee made on the Discover Card were at least impliedly permitted by Kenna because he permitted her to use the card and deferred to her review of the bills each month. Indeed, several purchases

were actually signed by Kenna, while others were confirmed by him over the phone.

Plaintiff relies heavily on testimony by Ms. Dorey Kenna that Defendant told her that she had charged on the credit card as to purchases made "unbeknownst" to Plaintiff, and she "felt bad" about those charges. Such expression of guilt about the extent of her charges did not, however, add up to a confession of fraud or use of the card without permission.

5(a). On or about March 2, 2002 up through and including June 4, 2002, the Defendant made various charges to Plaintiff's Discover Credit Card No. 6011–0075–8024–0413 (the "second credit card" referred to hereinabove).

(b). Defendant has admitted that $7,112 of those charges were made by her for merchandise exclusively for her use.

(c). Those charges include:

| March 2 | J. Crew | $536.20 |
|---|---|---|
| March 3 | Nordstroms | $242.38 |
| March 6 | J. Crew | $155.88 |
| March 6 | J. Crew (internet order) | $177.21 |
| March 6 | Banana Republic Online | $319.75 |
| March 6 | Ann Taylor Store | $ 70.30 |
| March 6 | Ann Taylor Store | $505.60 |
| March 17 | Marshall Fields | $144.31 |
| March 17 | Marshall Fields | $540.33 |
| March 17 | Saks Fifth Avenue | $569.63 |
| March 17 | Banana Republic | $ 34.51 |
| March 18 | Bride Smart | $181.31 |
| March 22 | Gap | $ 85.89 |
| March 22 | Banana Republic | $245.78 |
| March 22 | J. Crew | $208.80 |
| March 6 | Shell | $ 22.89 |
| March 18 | Shell | $ 19.08 |
| March 20 | Cingular Wireless | $203.51 |
| April 18 | Bebe | $299.25 |
| April 18 | Bebe | $259.94 |
| April 20 | Nordstrom | $162.75 |

| April 20 | Nordstrom | $160.58 |
| April 20 | Nordstrom | $ 36.89 |
| April 28 | Marshall Fields | $154.79 |
| April 28 | Marshall Fields | $ 95.01 |
| April 28 | J. Crew | $239.12 |
| April 29 | J. Crew | $ 90.66 |
| April 19 | Eyeland of S. John's, Hinsdale, IL | $390.00 |
| May 3 | Banana Republic | $200.10 |
| May 3 | Gap | $251.12 |
| May 9 | Neiman Marcus Online | $144.41 |
| May 9 | Neiman Marcus Online | $ 94.20 |
| June 4 | Cingular Wireless | $ 36.00 |
| June 4 | Cingular Wireless | $233.82 |

6. Lee made at least five (5) payments totaling $1,700 to Discover Card on the foregoing account through and including June 21, 2002.

7. On June 4, 2002, Plaintiff informed Lee that he wanted to end their relationship; the charges complained of here were made prior to their "break-up."

8. On June 21, 1002, Defendant executed a signed document, witnessed by another individual, in which she admitted that she owed Kenna $6,400 for the charges made to Plaintiff's Discover Card, thereby acknowledging to that extent that she was obliged to pay for some of her charges on that card. A debt due in that amount from Defendant to Plaintiff was thereby admitted.

### CONCLUSIONS OF LAW

Under 11 U.S.C. § 523(a)(2)(A), a debt may be denied dischargeability if it is incurred through:

"... false pretense, a false representation, or actual fraud...."

■ Actual fraud is asserted here under 523(a)(2)(A). This requires Plaintiff to prove that (1) a fraud occurred; (2) the Debtor–Defendant was guilty of intent to defraud; and (3) the fraud gave rise to the debt that is the subject of the discharge dispute. *McClellan v. Cantrell*, 217 F.3d 890, 893–894 (7th Cir.2000). *McClellan* further explained that

"[f]raud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by suppression of truth." *Id.* at 893.

■ Defendant would have defrauded Plaintiff if she had taken his credit card without permission and used it to make personal charges without his permission. But that did not happen.

Under 11 U.S.C. § 523(a)(6) a debt may be barred from dischargeability if resulting from:

"... wilful and malicious injury by the debtor to another entity or to the property of another entity."

■ Under this provision, the Plaintiff here was required to prove (1) that the Debtor–Defendant intended to and caused an injury to his property; (2) that the Debtor's actions were willful; and (3) that the Debtor's actions were malicious. *French, Kezelis & Kominiarek, P.C. v. Carlson (In re Carlson)*, 224 B.R. 659, 662 (Bankr.N.D.Ill.1998), *aff'd*, 2000 U.S. Dist. LEXIS 1906, No. 99 C 6020, 2000 WL 226706 (N.D.Ill. Feb.22, 2000), *aff'd* 2001 U.S.App. LEXIS 23159, 2001 WL 1313652 (7th Cir. Oct.23, 2001).

■ "Willful" for purposes of § 523(a)(6) means intent to cause injury, not merely the commission of an intentional act that leads to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Plaintiff must prove that the Debtor actually intended to cause harm and not merely that the Debtor acted intentionally and harmed resulted. *Id.* at 61–62, 118 S.Ct. 974. The Debtor

must have intended the consequences of the act. *Id.* Injuries either negligently or recklessly inflicted do not come within the scope of § 523(a)(6). *Id.* at 64, 118 S.Ct. 974. The Supreme Court did not define the scope of the term "intent" utilized to describe willful conduct. Precedent, however, has found that either a showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts can establish the requisite intent required in *Geiger.* See *Rae v. Scarpello (In re Scarpello),* 272 B.R. 691, 704 (Bankr.N.D.Ill.2002)and cases cited therein.

"Malicious" means "in conscious disregard of one's duties or without just cause or excuse...." *In re Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994). The test for maliciousness under § 523(a)(6) is (1) a wrongful act, (2) done intentionally, (3) which causes injury to the creditor, and (4) is done without just cause and excuse. *Park National Bank & Trust, (In re Paul),* 266 B.R. 686, 696 (Bankr.N.D.Ill. 2001). A debtor does not have to act with ill will or a specific intent to do harm for the conduct to be malicious. *In re Thirtyacre,* 36 F.3d at 700.

It can be assumed without deciding that Plaintiff's credit card in issue (or at least his right to charge on it) was his "property," or at least that any charging on the card without consent would harm Plaintiff's assets and liabilities. However, she did not use it wilfully or maliciously to cause him injury, but rather used it as permitted expressly or impliedly.

### CONCLUSION

Plaintiff has therefore failed to establish his case under either § 523(a)(2)(A) or § 523(a)(6). Judgment will separately enter in favor of Defendant. The parties will thereby be left where they were when they separated, and it is appropriate that they each bear their own costs.