**In re Kathleen Jo TANKERSLEY, Debtor.**

**No. 03–04981–9P3.**

United States Bankruptcy Court, M.D. Florida, Ft. Myers Division.

Feb. 12, 2004.

Kathleen Jo Tankersley, pro se, Port Charlotte, FL, for Debtor.

## ORDER ON ESTIMATION OF THE CLAIM OF K & M ASSOCIATES, INC. (Doc. No. 31)

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS CAUSE came on for consideration at a duly scheduled final evidentiary hearing to consider the "Verified Motion to Liquidate and Estimate Claim" (Doc. No. 31), filed by K & M and Associates, Inc.(K & M) on August 19, 2003. The matter under consideration in this Chapter 13 case of Kathleen Jo Tankersley (Debtor) is whether a legal liability was created on the Debtor, which makes the claim attributable to the Debtor as a recipient of transfers from her husband, Ronald Tankersley (Tankersley). It is without dispute that the Debtor did not have a direct relationship with K & M and she had no direct liability for the debt incurred by Tankersley. If this Court finds that the Debtor is liable to K & M, this Court must determine the amount of her liability.

A brief summary of the relevant procedural as well as factual history is as follows. Prior to the filing of this Chapter 13 case, the Tankersleys lived on the West coast, in both Nevada and California. Tankersley lived in California and operated as a land developer and a general contractor. He operated his businesses individually at times, but mostly through several different entities, including Tankersley Construction, Inc.; Treehouse Custom Homes LLC; Construction Equipment Leasing, Inc.; North Springs Estates Builders, Inc.; North Springs Estates, Ltd.; and Cal Vista Holdings, Inc.

On March 24, 1994, Tankersley entered into a limited partnership known as North Springs Estates with K & M, a Nevada corporation that owned real property for development (Tr. 8). Under a partnership agreement, Tankersley became general partner and K & M a limited partner, each holding a fifty percent interest in the limited partnership. (Tr. 9). Apparently, the arrangement did not work out, and the parties ended in litigation, when on July 1,

1999, K & M filed a Complaint in the Second Judicial District Court of the State of Nevada, in the County of Washoe against Tankersley and the several entities controlled by him described earlier. (Db.Ex. 1). The Debtor was named as a defendant in the original Complaint. Based on a stipulation by the parties, the Debtor was dismissed from the suit on February 23, 2001, by the court (Db.Ex. 2).

The state court litigation culminated into the entry of a Judgment based on the verdict returned by the jury in favor of K & M and against all the named defendants. (K & M Ex. 1). The jury awarded compensatory damages of $3,253,745 and a punitive damage award in the amount of $750,000, plus prejudgment interest in the amount of $815,596 from July 1999 until the entry of the Judgment on May 11, 2001. On September 20, 2001, the court entered an Amended Judgment by adding $129,443.25 plus costs of $72,681.31 to the original amount awarded. (K & M Ex. 2). The total amount of the Final Judgment was fixed at $5,021,465.56. The Judgment was appealed to the Supreme Court of Nevada, who affirmed the Judgment by Order of Affirmance, entered on November 5, 2003. Thus, the Judgment became final. (K & M Ex. 11).

K & M embarked on a campaign to collect the Judgment; however, it has not been satisfied primarily because of what transpired before and after the suit was filed. The Financial Statement prepared for Tankersley dated December 31, 1996 indicated that he had assets in the amount of $6,231,793 and a net equity of 3,820,115. (K & M Ex. 6). According to a Statement of Financial Condition dated September 30, 1999, the assets of Tankersley had a value of $4,385,659 (K & M Ex. 7).

Between August 1994 and May 5, 2001, Tankersley was the sole owner individually of forty-four different parcels of real estate located in California and in Nevada. (K & M Ex. 8). In addition, Tankersley purchased a commercial building located at 245 Vine Street in Reno, Nevada. Tankersley held this property, just like the others, as his sole and separate property and the Debtor never had any cognizable interest in these properties.

The Debtor married Tankersley on October 5, 1994. (Tr. 43). The Debtor brought no real property interest into the marriage and with the exception of an automobile and some personal items, had no assets of any significance. (Tr. 46, 198). The Debtor was not gainfully employed at any time during her marriage to Tankersley. (Tr. 47, 162). Notwithstanding, she scheduled on her Summary of Scheduled, when she filed her Petition for Relief under Chapter 13, assets valued at a total of $453,577 and liabilities of $36,052, of which $5,855 was for two unsecured debts owed to attorneys for legal services performed with the balance as a secured obligation incurred when she purchased a motor home. (Doc. No. 1). She is current on a motor home and that contract was never in default. (Tr. 172).

Tankersley contends that the majority of his investments were sold prior to the commencement of K & M's lawsuit against him. (Tr. 62). The record refutes this contention. For instance, after the entry of the Judgment, the court issued a writ of attachment and attached the Vine Street property. (K & M Ex. 9). Moreover, it is without dispute that when Tankersley left Reno in May of 2001, he deposited $171,688.07 in the joint account opened by him with the Debtor. (K & M Ex. 18; Tr. 73). By May 22, 2001, the balance in this account was at zero, which was reduced by withdrawals in increments of $9,000. (K & M Exh. 18). According to Tankersley, the entire sum was lost through gambling losses. (Tr. 77–78). However, Tankersley

failed to produce any documents to support this contention such as proofs of purchases of gambling chips, or bills from the hotels where he stayed while in Las Vegas. Tankersley was unable to furnish a satisfactory explanation as to why he did not purchase chips at a cashier's cage rather than going to and from the bank nine times on a single day. (Tr. 77–78).

On May 8, 2001, Tankersley borrowed $250,000 from the Community Bank of Salinas, California. (Tr. 80–81). The loan was secured by a mortgage on a commercial property owned by him and held, as his is sole and separate property, with a promissory note payable to him. Notwithstanding, the proceeds of the loan were deposited into the Debtor's account in Florida (Tr. 83). Tankersley also owned a property on Plumb Street in Reno, which was sold just prior to the commencement of the trial. (Tr. 85). The buyer paid the purchase price with the execution of a promissory note and some cash. Tankersley offered the buyer a ten percent discount on the purchase price if the note was paid in full at the closing. (Tr. 87). The proceeds were put into the Debtor's account in Florida. (Tr. 89).

Tankersley also owned a property referred to as the Home Garden Property that he sold to C.R. Jeffries, Co. (Tr. 90–91). The last payment on the note was in the amount of $212,000, which was paid in late December 2000. It was deposited in a joint account with the Debtor and immediately swept to a brokerage account in Reno and then on to a Bank of America account in Port Charlotte, Florida. (K & M Ex. 19(b); Tr. 92). It is not clear in whose name the brokerage account was maintained.

In 1988, Tankersley obtained a deed of trust from William Bogard Company in the amount of $100,000. Tankersley held the deed of trust as his sole and separate property. (Tr. 96). In March 2001, a month before the start of the trial, the trust deed was liquidated and produced $41,178. This money was deposited in a money management account at Bank of America. (Tr. 97–98). This account was identified only as "Tankersley Account." The total proceeds from the sales of Tankersley's real estate holdings were about $3,250,000 (K & M. Ex. 19). In sum, the record is clear that monies that were solely Tankersley either ended up in a joint account with Tankersley and the Debtor or in the Debtor's sole account without any consideration given by the Debtor for such monies.

The dischargeability of the Debtor's Chapter 13 bankruptcy filing is not at issue here. The issue is whether the Debtor knew the transfer of funds from the Tankersley account to her were fraudulent. Knowing receipt of the fruits of a fraudulent transfer renders the transfer not valid. The Debtor contends that when she and Tankersley moved to Florida and set up bank accounts in her name only, they did so on the advice of an attorney to avoid the judgment by K & M against Tankersley. (Tr. 180).

In the case of *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir.2000), the Seventh Circuit Court of Appeals analyzed the use of the term "actual fraud" as set forth in 11 U.S.C. § 523(a)(2)(A). "By distinguishing between 'a false representation' and 'actual fraud,' the statute makes clear that actual fraud is broader than misrepresentation.'" *McClellan*, 217 F.3d at 893. Although the issue in *McClellan* dealt with nondischargeability, the analysis by the Court of Appeals is applicable in this case. The Court further acknowledged that many cases have assumed that "actual fraud" involves a misrepresentation. However, such a restricted definition is not required, as actual fraud encompasses "any deceit,

artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *Id.* at 893, citations omitted. The Court of Appeals explained that:

> Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.

*Id.* at 893, citations omitted.

■ The Debtor knew about the Judgment against her husband. In accepting the transfer of the money from Tankersley and his properties without furnishing any corresponding consideration for these transfers, she colluded with Tankersley to thwart K & M's collection of the debt that Tankersley owed it. The debt that K & M seeks to collect from the Debtor arises by operation from her fraud. That debt arose not when the Judgment was rendered against Tankersley, but when the Debtor prevented K & M from collecting from against Tankersley.

The Bankruptcy Code defines "debt" very broadly, as "liability on a claim." 11 U.S.C. § 101(12). And, "claim" is likewise defined very broadly, as any "right to payment," whether liquidated or unliquidated, disputed or undisputed, legal or equitable. 11 U.S.C. § 101(5). The debt at issue is the debt the Debtor incurred to K & M by committing a fraud against the company.

Based upon the foregoing, this Court is satisfied that Debtor willfully and maliciously injured K & M's property, that is its interest in the Judgment, by impairing K & M's right of collection of the debt. The Debtor is not liable to K & M for the punitive portion of the Final Judgment. However, the Debtor is liable to K & M for the $3,253,745 compensatory damages. Therefore, the claim of Tankersley against the Debtor is a valid and enforceable obligation against the Debtor that is hereby liquidated and estimated in the amount of is $3,253,745.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Verified Motion to Liquidate and Estimate Claim be, and the same is hereby, granted. The claim of K & M against the Debtor be, and the same is hereby, determined to be $3,253,745.