## In Re Thomas V. GATHMAN, Debtor.

### Angela D. Passmore, Plaintiff,

### v.

### Thomas V. Gathman, Defendant.

**Bankruptcy No. 03–75715.**
**Adversary No. 04–7055.**

United States Bankruptcy Court,
C.D. Illinois.

Aug. 13, 2004.

John S. Narmont, Springfield, IL, for Debtor and Defendant.

R. Phillip Reed, Springfield, IL, for Plaintiff.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

This matter came before the Court for trial on Plaintiff's adversary complaint.

Plaintiff seeks a finding of nondischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A).[1]

Angela D. Passmore, formerly Angela D. Gathman ("Plaintiff") and Thomas V. Gathman ("Debtor") were married on October 12, 1985, and divorced on December 4, 2000, when a Judgment of Dissolution of Marriage was entered in the Circuit Court of Sangamon County, Illinois. Pursuant to the parties' Marital Settlement Agreement dated September 5, 2000, which was incorporated into the Judgment of Dissolution of Marriage, Plaintiff was to receive as her sole and exclusive property the former marital residence located at 2273 Eleanor, Springfield, Illinois. Plaintiff and Debtor were each required to pay certain debts. The Debtor agreed to be solely responsible for, and hold the Plaintiff harmless from, a second mortgage on the former marital residence owed to Amerus Bank and three credit cards.

In December, 2000, Debtor sought to obtain a loan from Illinois National Bank ("INB") in the amount of $25,000 in order to pay those debts. Debtor offered as collateral his truck, his mother's vehicle, and a whole life insurance policy, but INB considered this insufficient collateral to make the loan. Upon being told this by Jeffrey L. Raes, an officer at INB, Debtor contacted the Plaintiff and asked if she would pledge the former marital residence as collateral for the loan. Debtor told Plaintiff that the term of the loan would be for about two years.

During the same period of time, Debtor quitclaimed his interest in the former marital residence to Plaintiff, and he was released from the first mortgage. Plaintiff signed an assumption of liability agreement granting INB a second mortgage on her residence as security for Debtor's

$25,000 loan. INB made the loan, which provided for 47 semi-monthly payments of $200 each, beginning January 15, 2001, and one payment of $20,641.37, due on December 31, 2002. Debtor utilized the loan proceeds to pay off the credit card indebtedness he was ordered to pay in the Marital Settlement Agreement, and to pay $11,066 to Amerus to pay off the former second mortgage.

Debtor made regular payments on the INB note for two years. At the end of 2002, the INB note came due. Debtor again asked Plaintiff about using the former marital residence as collateral to extend the note to amortize the balloon. Plaintiff indicated that she would think about it. The parties had no further conversations about the topic, nor did any representative of INB contact the Plaintiff. Rather, INB issued the loan to Debtor on December 31, 2002, releasing Debtor's vehicle and Debtor's mother's vehicles as collateral. The mortgage and the life insurance policy continued to secure the new note.

On December 11, 2003, Debtor filed his voluntary Chapter 7 petition in bankruptcy. Debtor scheduled INB as a secured creditor. At the time of the filing, Debtor owed INB approximately $16,500 on the subject loan. INB has since cashed out the whole life insurance policy pledged as collateral, and the amount still due and owing is approximately $9,679. INB's only remaining collateral for said debt is its mortgage on Plaintiff's residence.

On March 19, 2004, Plaintiff filed her adversary complaint. Plaintiff contends that the Debtor committed fraud against her at two times—once at the time the first INB loan was made to induce her to consent to the mortgage and again with

---

1. Plaintiff's Complaint also mentioned 11 U.S.C. § 523(a)(6), but no evidence or argument was offered to support a finding of nondischargeability under that subsection.

Debtor's silence when the loan was renewed on December 31, 2002.

Section 523(a)(2)(A) of the Bankruptcy Code states as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> >
> > > (A) false pretenses, a false representation, or actual fraud(.)

■ "Actual fraud" precluding a discharge in bankruptcy consists of any deceit, artifice, trick or design, involving direct and active operation of the mind used to circumvent or cheat another; something said, done or omitted with a design of perpetrating what is known to be cheat or deception. *In re Schmidt*, 70 B.R. 634 (Bankr.N.D.Ind.1986). The Seventh Circuit Court of Appeals recently defined the term "fraud":

> Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.

*McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir.2000) (citation omitted).

■ The existence of fraud for nondischargeability purposes may be inferred if the totality of circumstances presents a picture of deceptive conduct by the debtor which indicates that he or she intended to deceive or cheat the creditor. *In re Schmidt, supra.* A breach of a contract or a failure to perform some promised act, by itself, will not render a debt nondischargeable under § 523(a)(2)(A), although entering into a contract or promising an act with no intention of performance may support a finding of nondischargeability. *In re Faulk*, 69 B.R. 743, 750 (Bankr.N.D.Ind. 1986).

■ A party seeking to establish an exception to discharge of a debt bears the burden of proof. *In re Harasymiw*, 895 F.2d 1170, 1172 (7th Cir.1990). To prevail, that party must prove the existence of fraud by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor. *In re Scarlata*, 979 F.2d 521, 524 (7th Cir.1992), *quoting In re Zarzynski*, 771 F.2d 304, 306 (7th Cir.1985).

■ The evidence and testimony in this case do not support Plaintiff's contention that she was defrauded by the Debtor when she granted INB a mortgage on her residence. Plaintiff has not demonstrated that the Debtor made a false statement to Plaintiff to induce her to grant the mortgage, much less has she proven that the Debtor intended to deceive or trick her with such a statement. Similarly, Plaintiff has failed to demonstrate that Debtor's actions were, in any way, in the nature of a deceitful scheme or design to gain some advantage over Plaintiff. The evidence indicated that the Debtor obtained the loan in order to satisfy his obligations under the Marital Settlement Agreement. He pledged his own vehicle and his own life insurance policy as collateral for the loan. He even sought and obtained his mother's pledge of her vehicle to secure the loan. When all of that collateral proved insufficient, he honestly represented the facts and his intentions to Plaintiff when he asked her to pledge the residence as collat-

eral for the loan. Prior to, during, and subsequent to the loan transaction, he intended to pay the debt and, in fact, he made regular payments on the debt for the two-year term of the note. As a consequence of obtaining the loan, he was able to pay off, among other debts, a second mortgage owed to Amerus which encumbered Plaintiff's residence and on which Plaintiff was a co-obligor. Evidently the parties never directly addressed the ramifications of the balloon payment due at the end of the two-year note or what arrangements would be made at that time with respect to extending the note or renewing the mortgage. The parties' failure to have done so at the time the mortgage was given does not suggest a nefarious motive on the part of Debtor in asking for and obtaining Plaintiff's pledge. Simply put, INB wanted more collateral and Debtor had nothing else with which to entice them to make the loan.

■■ While Debtor's extension of the note on December 31, 2002, had the effect of continuing the mortgage in INB's favor, the Court fails to find any artifice or fraud in Debtor's actions. Debtor did not obtain Plaintiff's express consent to renew the note, thereby extending the mortgage with INB, but neither did Plaintiff expressly withhold it. Debtor gave the new note without making any representation whatsoever to Plaintiff or to INB respecting the mortgage. While his act/omission may have been negligent, negligence alone, even gross negligence, will not support a finding of nondischargeability. *In re Guy*, 101 B.R. 961 (Bankr.N.D.Ind.1988). To some degree or another, both the Plaintiff and INB bear some responsibility for the situation in which Plaintiff finds herself— the Plaintiff for failing to read and understand what she signed when the mortgage was granted, and INB for declining to inform the Plaintiff that the mortgage was being extended with the renewal/extension of the note on December 31, 2002.

At this point, the Court would note that Debtor's actions in securing a loan to pay off his obligations under the Marital Settlement Agreement has not constituted as great a disservice to Plaintiff as she argues it has. The INB loan proceeds paid off $25,000 in joint debt, including $11,066 on a second mortgage encumbering Plaintiff's residence. After application of the Debtor's life insurance cash surrender value to the note, the amount currently due on the INB note is $9,679. It is difficult to imagine that the Debtor, without the benefit of the INB loan, would have been able independently to reduce his obligations to such an extent in the time period since the parties' divorce. Had the Debtor not obtained the INB loan, Plaintiff may have had a potential claim of nondischargeability under 11 U.S.C. § 523(a)(15) of the subject debts. However, the likelihood of a non-debtor spouse prevailing in such an action is far from certain.

Based upon the evidence and testimony presented at trial, the Court is unable to conclude that any statements made or actions or forbearances on the part of the Debtor were in violation of § 523(a)(2)(A). Accordingly, the Plaintiff's adversary complaint is dismissed.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ORDER

For the reasons set forth in an Opinion entered this day,

IT IS HEREBY ORDERED that debt subject to this adversary proceeding be and is hereby declared discharged in Debtor's bankruptcy.

IT IS FURTHER ORDERED that the Complaint to Determine Dischargeability of Debt be and is hereby dismissed.