[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15603
Non-Argument Calendar
_____

D.C. Docket Nos. 8:11-cv-02648-VMC, 8:08-bk-14131-CED

In Re: NORTHLAKE FOODS, INC.
         a.k.a. North Lake Foods, Inc.,

                                                Debtor.

_____

DAVID H. CRUMPTON,

                                                Plaintiff - Appellant,

                          versus

RICHARD STEPHENS,

                                                Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 6, 2013)

Before TJOFLAT, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

I.

Northlake Foods, Inc. ("Northlake"), is a Georgia corporation that owned approximately 150 Waffle House restaurants in Georgia, Florida, and Virginia. On March 1, 1991, Richard Stephens, a shareholder of Northlake, executed a Shareholders Agreement. Section 5.01 of the agreement contained the following provision:

> If the Corporation's income ever becomes taxable to the Shareholders, rather than to the Corporation, the Corporation shall pay a dividend at least annually in an amount and at a time sufficient for each Shareholder to pay out of the dividend all income tax, state and federal, attributable to that portion of the Corporation's income included in such Shareholder's income in the year preceding the year of payment of the dividend.[1]

Record, vol. 1, no. 1, at 55.

Northlake designated itself an S corporation on its 2005 federal income tax return.[2] Northlake's 2005 federal income tax return also reflected positive taxable

---

[1] The Shareholders Agreement was attached as an exhibit to the complaint.

[2] A C corporation is a corporate entity that is required to pay taxes on the income it earns. If a C corporation decides to issue dividends to its shareholders, the shareholders must pay income tax on these dividends. This arrangement exposes shareholder dividends to double taxation—a C corporation's income is taxed at the corporate level and the portion of the C corporation's income that is passed on to shareholders is taxed again at the shareholder level. An S corporation, by contrast, is not taxed at the corporate level. Instead, the responsibility for the payment of taxes owed by the S corporation "passes through" to its shareholders, who pay the tax liability in proportion to each shareholder's pro rata share of the S corporation. An S corporation avoids double taxation on dividends because S-corporation income is only taxed

income for that year.  As a shareholder of an S corporation, Stephens was responsible for paying a share of the taxes owed on Northlake's income.  The amount of Stephens's personal income tax attributable to his share of Northlake's taxable income for 2005 was $94,429.00.  In 2006, citing § 5.01 of the Shareholders Agreement, Northlake's board of directors passed a resolution[3] authorizing a cash dividend to Stephens in the amount of $94,429.00.  During 2006, Northlake made cash payments to Stephens ("2006 Transfer") in accordance with the resolution totaling $94,429.00.

On September 15, 2008, Northlake filed for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida.  On January 28, 2009, the Bankruptcy Court appointed David Crumpton as bankruptcy trustee for Northlake.  On July 28, 2010, Crumpton filed a complaint in the Bankruptcy Court, claiming that the 2006 Transfer was a fraudulent transfer subject to avoidance and recovery by Crumpton under 11 U.S.C. §§ 544, 548, 550, and 551 and the Georgia Uniform Fraudulent Transfer Act, O.C.G.A. § 18-2-70 et seq. The complaint alleged that the 2006 Transfer was fraudulent because (1) at the time of the transfer Northlake was insolvent or became insolvent as a result of the transfer, see 11 U.S.C. § 548(a)(1); and (2) Northlake did not receive

---

once—at the shareholder level. See Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp., 849 F.2d 1336, 1352 (11th Cir. 1987).

[3] The board of directors resolution was attached as an exhibit to the complaint.

3

reasonably equivalent value in exchange for the 2006 Transfer, see 11 U.S.C. § 548(a)(1)(B)(i).  Stephens moved for judgment on the pleadings.

The Bankruptcy Court ruled that Stephens was entitled to judgment on the pleadings because the complaint reflected that Northlake received reasonably equivalent value for the 2006 Transfer.  The court reached this conclusion on two grounds.  First, in the context of fraudulent transfer law, value is defined to include satisfaction of an antecedent debt.  See 11 U.S.C. § 548(d)(2)(A).  The court determined that (1) Stephens's performance under the Shareholders Agreement created an antecedent debt; (2) the 2006 Transfer was in satisfaction of that antecedent debt; and (3) this transaction represented a reasonably equivalent exchange of value.  Second, the Bankruptcy Court ruled that Northlake received reasonably equivalent value for the 2006 Transfer "by virtue of the Debtor's Subchapter S election for federal income tax purposes."  Record, vol. 1, no. 1, at 126.  The court explained that

> [t]he 2006 Transfer was made to [Stephens] pursuant to the Shareholders Agreement to pay [Stephens's] proportionate share of income tax liability incurred by [Stephens] as a result of [Northlake's] operations.  Without the Sub-S corporation designation for federal income tax purposes, [Northlake] would have paid the income tax directly.

Id.

On February 15, 2011, the Bankruptcy Court entered an order dismissing the complaint without prejudice and granting Crumpton leave to file an amended

4

complaint.  Crumpton filed an amended complaint containing one count; it alleged that the 2006 Transfer constituted an illegal dividend under Georgia law, O.C.G.A. § 14-2-640(c).  Stephens moved the Bankruptcy Court to dismiss the amended complaint.  On September 9, 2011, the court entered an order granting the motion and dismissing the proceeding, ruling that O.C.G.A. § 14-2-640 only provides a cause of action against directors who agree to distribute an illegal dividend, not against shareholders who receive an illegal dividend.  Because it was undisputed that Stephens was not a director of Northlake, the court concluded that Crumpton could not bring this claim against Stephens.

On September 23, 2011, Crumpton appealed the Bankruptcy Court's February 15, 2011, order and September 9, 2011, order to the United States District Court for the Middle District of Florida.  In an order entered on September 27, 2012, the District Court affirmed the Bankruptcy Court's February 15, 2011, order, holding that Northlake's election as an S-corporation constituted reasonably equivalent value for the 2006 Transfer.  In response to Crumpton's contention that Northlake's S corporation election only benefited shareholders and not creditors, the District Court disagreed with the notion that creditors must necessarily benefit from a transaction in order for it to not be a fraudulent transfer.  According to the District Court, as long as "the debtor's unsecured creditors are not <u>worse</u> <u>off</u> because the debtor . . . has received something reasonably equivalent to what the

5

debtor has transferred, then no fraudulent transfer or conveyance has occurred." Record, vol. 1, no. 18, at 281 (quoting In re Stewart Fin. Co., No. 03-30277, 2007 WL 1704423, at *4 (Bankr. M.D. Ga. June 8, 2007)).  Because Northlake would have had to pay income taxes itself had it not elected to be an S corporation, the District Court concluded that the 2006 Transfer did not make Northlake or its creditors worse off and thus constituted a reasonably equivalent exchange of value. Finding that ground sufficient, the court did not address the question of whether the 2006 Transfer satisfied an antecedent debt owed under the Shareholders Agreement.

The District Court also affirmed the Bankruptcy Court's September 9, 2011, order, holding that Georgia's illegal dividend statute could not be applied to Stephens because he was not a director of Northlake.[4]

Crumpton now appeals the District Court's judgment.

## II.

In reviewing bankruptcy court judgments, we sit as the second court of review.  We review legal determinations made by either the bankruptcy court or the district court de novo.  In re JLJ Inc., 988 F.2d 1112, 1116 (11th Cir. 1993). We review the bankruptcy court's findings of fact for clear error.  Id.  When reviewing a ruling on a motion for judgment on the pleadings under Federal Rule

---

[4] Crumpton does not contest this ruling in the instant appeal.

of Civil Procedure 12(c), we accept as true all allegations in the complaint and construe them in the light most favorable to the nonmoving party.  Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998).  Because there are no findings of fact to be made from a judgment on the pleadings, we review the legal significance accorded to the facts de novo.  Elston v. Talladega Cnty. Bd. of Educ., 997 F.2d 1394, 1405 (11th Cir. 1993).

A fraudulent transfer occurs when (1) a debtor was insolvent on the date that the transfer was made or became insolvent as a result of the transfer; (2) the debtor received less than a reasonably equivalent value in exchange for the transfer; and (3) the transfer was made on or within two years before the date the debtor filed the petition for bankruptcy.  See 11 U.S.C. § 548(a)(1).  The parties do not dispute on appeal whether the 2006 Transfer was made within two years of the petition filing or whether Northlake was insolvent on the date of the transfer or became insolvent as a result of the transfer.  The only question before us is whether the District Court erred when it ruled that Northlake's S-corporation election constituted reasonably equivalent value for the 2006 Transfer.[5]

"The purpose of voiding transfers unsupported by reasonably equivalent value is to protect creditors against the depletion of a bankrupt's estate.  Therefore,

---

[5] Crumpton also argues on appeal that the Bankruptcy Court erred in ruling that the 2006 Transfer satisfied an antecedent debt.  Because we affirm the District Court on grounds unrelated to the antecedent debt question, we need not address this argument.

7

this provision does not authorize voiding a transfer which confers an economic benefit upon the debtor." In re Rodriguez, 895 F.2d 725, 727 (11th Cir. 1990) (internal marks and citations omitted). Where an economic benefit is present, "the debtor's net worth has been preserved, and the interests of the creditors will not have been injured by the transfer." Id. (internal quotation marks omitted). The complaint clearly shows that the Shareholders Agreement provides Northlake with valuable benefits by virtue of its S-corporation election. We hold that these benefits constitute a reasonably equivalent exchange of value for the 2006 Transfer and therefore affirm.

Crumpton argues that there is no evidence in the record by which a court could determine the value of the S-corporation election or if the S-corporation election even constituted a benefit to Northlake. Crumpton asserts that the Bankruptcy Court was required to conduct a fact-intensive inquiry and consider the totality of the circumstances surrounding the 2006 Transfer before determining that it was made for a reasonably equivalent exchange of value.

Although some cases of fraudulent transfer may warrant an inquiry into the totality of the circumstances, this case is not one of them. Crumpton's argument—that there is no evidence indicating the benefit obtained by Northlake under the Shareholders Agreement or the 2006 Transfer—is contradicted by the exhibits and allegations in his complaint. Taking these allegations as true, as we are required to

8

do when reviewing a judgment on the pleadings, the benefit Northlake received is plain. In 1991, Northlake approached Stephens with a Shareholders Agreement that requested his consent to pay a share of Northlake's taxes if it ever elected to be treated as an S corporation. In exchange for taking on this tax liability, the Shareholders Agreement obligated Northlake to reimburse Stephens for the personal income tax liability he incurred that was attributable to the tax liability of Northlake. This agreement benefitted Northlake because it secured shareholder consent for Northlake to shift to S-corporation status whenever it determined it was advantageous to do so. Not only did the Shareholders Agreement grant Northlake greater flexibility to shift its tax status, when it did decide to shift status, Northlake enjoyed the added benefit of freeing up cash that otherwise would have been dedicated to paying Northlake's tax liability. Though Northlake incurred a financial obligation to its shareholders under the agreement, it did not need to satisfy that obligation until a year after the shareholders had incurred Northlake's tax liability. This had the effect of providing Northlake with another valuable benefit: time.

Because it is clear that the Shareholders Agreement conferred benefits on Northlake, Crumpton in effect seeks an evidentiary hearing to determine that the value of the benefits received by Northlake are reasonably equivalent in value to the difference, if any, of the money paid to Stephens after its S-corporation election

9

and the money that Northlake would have paid to the federal government directly had it not elected to be an S corporation. Crumpton, however, is not entitled to a hearing. The facts raised in the complaint and its exhibits, taken as true, are sufficient to conclude that Northlake's benefits under the Shareholders Agreement were a reasonably equivalent exchange for the 2006 Transfer.

The complaint alleges that the 2006 Transfer was not supported by consideration—that is, that no benefits were given to Northlake in exchange for the transfer. As we have discussed, the benefits evident in the Shareholders Agreement, which provided the basis for the 2006 Transfer, directly contradict Crumpton's assertion. Moreover, the complaint offers no additional factual allegations describing the inadequacy of the consideration for the 2006 Transfer. We therefore afford this conclusory allegation no weight. See Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1205–06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

The concept of reasonably equivalent value does not require a dollar-for-dollar transaction. In re Advanced Telecomm. Network, Inc., 490 F.3d 1325, 1336 (11th Cir. 2007). The 2006 Transfer was made in exchange for the benefits

10

afforded Northlake as described in the Shareholders Agreement.  These benefits are evident from the face of the complaint and the exhibits attached to it.  Because the complaint contains no allegations indicating why these benefits do not constitute a reasonably equivalent exchange for the 2006 Transfer, we have no grounds to conclude they do not.  Accordingly, the District Court's judgment is

AFFIRMED.