[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13849
Non-Argument Calendar
_____

D.C. Docket No. 6:12-cv-00100-ACC-DAB


MEDICOMP, INC.,
a foreign profit corporation,

                                                            Plaintiff-Appellant,

versus

UNITED HEALTHCARE INSURANCE CO.,
a foreign corporation,
UNITED HEALTHCARE OF NEW YORK,
a foreign profit corporation,
UNITED HEALTHCARE SERVICE, LLC,
a foreign profit corporation,
UNITED HEALTHCARE SERVICES, INC.,
a foreign profit corporation,

                                                            Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 1, 2014)

Before HULL, MARCUS, and FAY, Circuit Judges.

PER CURIAM:

The summary judgment entered in favor of the appellees is affirmed for the reasons set forth in the Order of the district court, dated July 22, 2013.

**AFFIRMED.**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MEDICOMP, INC.,**

      **Plaintiff,**

**v.**                                         **Case No:  6:12-cv-100-Orl-22DAB**

**UNITEDHEALTHCARE INSURANCE COMPANY, UNITED HEALTHCARE OF NEW YORK, UNITED HEALTHCARE SERVICE, LLC, UNITED HEALTHCARE SERVICES, INC.,**

      **Defendants.**

_____

## ORDER

This cause comes before the Court on the Motion of the Defendants, various entities of United Healthcare Insurance Company (collectively, "Defendants"), for Judgment on the Pleadings, or, alternatively, for Summary Judgment (Doc. No. 73). Plaintiff Medicomp, Inc., ("Plaintiff") filed a Memorandum in Opposition (Doc. No. 77), to which Defendants replied (Doc. No. 80). This is the third time the Court has been asked to address the sufficiency of Plaintiff's Complaint, (*see* Doc. Nos. 42, 53), but it is the Court's first opportunity to consider the merits of Plaintiff's claim. The Court will grant summary judgment because Plaintiff has failed to submit any evidence to meet its statutory burden of establishing its standing to sue.

### I. BACKGROUND

For purposes of the Motion for judgment on the pleadings, the Court continues to accept as true the facts as alleged in Plaintiff's Amended Complaint, as discussed in this Court's prior Order (Doc. No. 42). Plaintiff originally brought five claims, but only one remains viable:

Defendants' alleged failure to reimburse Plaintiff for its wireless monitoring device in violation of the federal Employee Retirement Income Security Act (ERISA). *See* 29 U.S.C. § 1132(a). In the dismissal Order, the Court assumed, based on the liberal pleading standard and Defendant's failure to raise the issue, that "Plaintiff ha[d] derivative standing to sue under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a) (2006), as an apparent third-party assignee of ERISA plan beneficiaries (here, presumably the patients who received the Wireless Device)," and cited *Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir. 1997) (per curiam), for support. (Doc. No. 42 at 3.) Defendants now assert that the Complaint fails to allege that Plaintiff had any such assignments, and they seek judgment on the pleadings as a remedy.

Alternatively, Defendants argue that they are entitled to summary judgment because Plaintiff has failed to produce evidence of any valid assignments of benefits. The parties conducted discovery on this and other issues for approximately six months, the discovery period has ended, and the deadline for filing dispositive motions has passed. Defendants filed the deposition of one of Plaintiff's executives, Dr. Daniel Balda, in support of their Motion for Summary Judgment; in response, Plaintiff submitted numerous examples of identical, redacted forms, purportedly signed by beneficiaries of Defendants' plans, authorizing Plaintiff to appeal Defendants' denial of benefits for the wireless monitoring device at issue in this litigation.

## II. LEGAL STANDARDS

### A. Judgment on the Pleadings

Rule 12(c) permits a motion for judgment on the pleadings "[a]fter the pleadings are closed[,] but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac*

*Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). As with a motion to dismiss, the Court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the nonmoving party. *In re Northlake Foods, Inc.*, 715 F.3d 1251, 1255 (11th Cir. 2013) (per curiam).

## B. Summary Judgment

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must satisfy this initial burden by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Norfolk S. Ry. v. Groves*, 586 F.3d 1273, 1277 (11th Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). However, the movant is entitled to summary judgment where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. When it conflicts, the court presumes the nonmoving party's evidence to be true and will draw all reasonable inferences in its favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003). In *Anderson v. Liberty Lobby*, the Supreme Court explained that the standard for summary judgment is "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." 477 U.S. 242, 252 (1986). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255.

## III. ANALYSIS

### A. ERISA Standing

The civil enforcement provision of ERISA permits a participant or beneficiary to bring suit "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1). The standing issue presented in this case is not of the "subject-matter-jurisdictional doctrine of justiciability which considers injury, traceability to the defendant, and redressability." *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1293 (11th Cir. 2004) (citation omitted). Instead, § 1132 functions as a statutory standing provision that "sets forth those parties who may bring civil actions under ERISA and specifies the types of actions each of those parties may pursue." *Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1524 (11th Cir. 1987). The language in the statute is clear: the only "parties who have independent standing to sue an ERISA plan" are participants, beneficiaries, fiduciaries, or the Secretary of Labor. *Cagle,* 112 F.3d at 1514. However, the Eleventh Circuit has ruled that Congress "did not intend to alter the general rule that an assignee of a right has the same standing to sue as the assignor," so a party may obtain "derivative standing based upon an assignment of rights from an entity listed in" § 1132(a).[1] *Id.* at 1515.

---

[1] The Eleventh Circuit also provided a policy rationale for its decision that primarily focused on the typical ERISA assignment, from a plan beneficiary to his or her physician:

> If provider-assignees cannot sue the ERISA plan for payment, they will bill the participant or beneficiary directly for the insured medical bills, and the participant or beneficiary will be required to bring suit against the benefit plan when claims go unpaid. On the other hand, if provider-assignees can sue for payment of benefits, an assignment will transfer the burden of bringing suit from plan participants and beneficiaries to providers[, who] are better situated and financed to pursue an action for benefits owed for their services. For these reasons, the interests of ERISA plan participants and beneficiaries are better served by allowing provider-assignees to sue ERISA plans.

*Cagle*, 112 F.3d at 1515 (internal citations and quotation marks omitted).

- 4 -

The *Cagle* panel did not "decide what constitutes a valid assignment of medical benefits covered by ERISA," *id.* at 1516 n.3, but a subsequent panel has shed at least some light on that question. In *Hobbs v. Blue Cross Blue Shield of Alabama*, two physician assistants sued an ERISA plan for its alleged failure to "include a provision in its health insurance policies for the payment of medical or surgical services provided by licensed physician assistants in violation of" a certain provision of Alabama law. 276 F.3d 1236, 1239 (11th Cir. 2001). In order to decide whether that claim was completely preempted and thus removable to federal court, the court had to determine that the physician assistants had standing to sue under ERISA; otherwise, their claim could not have arisen under federal law. *Id.* at 1240. The physician assistants were obviously not beneficiaries, participants, or fiduciaries under § 1132(a), so the only way they could have had standing to sue under ERISA was if they received a valid assignment of that right from an individual enumerated in the statute. *Id.* at 1241 (citing *Cagle*, 112 F.3d at 1512–16.) The *Hobbs* panel thus affirmed the *Cagle* holding, but clarified that derivative standing was available only "when the healthcare provider had obtained a written assignment of claims from a patient who had standing to sue under ERISA as a 'beneficiary' or 'participant.'" *Id.* (citations omitted). Because the ERISA plan administrator in *Hobbs* "failed to present proof of an assignment, its reliance on *Cagle* . . . [was] misplaced." *Id.* at 1242.

Subsequent Eleventh Circuit cases have confirmed the *Hobbs* panel's reliance on written assignments from patients with standing to sue. In *Connecticut State Dental Association v. Anthem Health Plans, Inc.*, the plaintiff-dentists were found to have standing where the defendant-insurer seeking removal cited the claim forms that the plaintiffs submitted for reimbursement for medical services rendered to the defendants' beneficiaries. 591 F.3d 1337, 1351 (11th Cir. 2009). Each claim form included the following sentence: "I hereby authorize

- 5 -

payment of the dental benefits otherwise payable to me directly to the below named dental entity." *Id.* Although the forms did not contain the names and signatures of the patients, the plaintiffs represented that the signatures were on file in their offices and the forms matched the assigning patients with the relevant ERISA plans from which the plaintiffs sought benefits. *Id.* at 1351 n.11.

Numerous district courts have applied the doctrine laid out in *Cagle* and *Hobbs*, including this one. In *Adventist Health System/Sunbelt Inc. v. Blue Cross & Blue Shield of Florida, Inc.*, the undersigned approved a magistrate judge's report and recommendation determining that the plaintiff-provider lacked standing to sue, despite having "submitted copies of some . . . claim forms," because the provider failed to "submit copies of any written assignment of benefits signed by [the relevant plan's] subscribers." No. 6:08-cv-1706-Orl-22KRS, 2009 WL 722303, at *7 (M.D. Fla. Mar. 18, 2009). This Court's approach to derivative standing via assignment is consistent with that of other judges in this district. *See, e.g., C.N. Guerriere, M.D., P.A. v. Aetna Health, Inc.*, No. 8:07-cv-1441-T-27MAP, 2007 WL 3521369, at *2–3 (M.D. Fla. Nov. 15, 2007) (refusing to find standing without "a written assignment of claims from a patient with standing," despite submission of "electronic claim form" stating that patient "authorized payment of member benefits by having a 'Signature on file' stamp indicated on the claim form"); *Current Wave Med. Sys., Inc. v. Cigna Corp.*, No. 8:07-cv-1102-T-26EAJ, 2007 WL 5389120, at *2 (M.D. Fla. Aug. 3, 2007) (finding standing only where the plaintiff provided a sample of its assignment of benefits form and stated in the complaint that its subscribers executed such assignments with their patient data forms).

**B. Judgment on the Pleadings**

- 6 -

Although the Complaint does not specifically allege that Plaintiff received written assignments from the beneficiaries of Defendants' plans, this issue is better resolved on summary judgment. Defendants' failure to raise this issue until now allowed the Court to infer, despite the inartful pleading, that Plaintiff had met the requirements for standing.[2] In any event, the issue is moot. The litigation has reached the close of discovery, (*see* Doc. Nos. 66, 72), and the Court finds that Plaintiff has failed to demonstrate an issue of material fact that would preclude summary judgment on the question of standing.

## C. Summary Judgment

Under clear Eleventh Circuit precedent and consistent district court interpretation, Plaintiff must have received written assignments of benefits from ERISA plan beneficiaries in order to have derivative standing to sue. Plaintiff does not submit, nor claim to have received, such assignments from any actual beneficiaries. Instead, Plaintiff asserts that it is entitled to standing because plan beneficiaries assigned their rights to their physicians, who then "transfer[red]" those assignments to Plaintiff. (Pl.'s Mem. Opp'n (Doc. No. 77) 8 (quoting Balda Dep. (Doc. No. 74-2) 56:2–7).) Plaintiff does not submit any legal authority for this proposition, but misconstrues *Connecticut State Dental* to suggest that "the possibility of direct payment" for medical services, regardless of the existence of an actual assignment, is sufficient to establish standing to sue. As previously discussed, the plaintiffs in *Connecticut State Dental* possessed written assignments of benefits from their patients; where that case discussed the "possibility of

_____

[2] The Amended Complaint states the following: "Plaintiff is a third party beneficiary to such insurance policy benefits as the contracts between Defendants and their insureds evince a clear and manifest intent to primarily and directly benefit medical service providers such as the Plaintiff." (Am. Compl. ¶ 17.) Although Plaintiff obviously did not claim an assignment, the pleading error was not so substantial that the Court felt compelled to dismiss on its own initiative.

direct payment," it was referring to the merit of the underlying claims for benefits, not the plaintiffs' standing. 591 F.3d at 1351, 1353.

Alternatively, Plaintiff asserts that it has standing because it received authorization from some beneficiaries to appeal unfavorable benefits determinations on their behalf. (*See* Pl.'s Mem. Opp'n Ex. A (Doc. No. 77-1).) After carefully considering these forms, it is clear to the Court that the beneficiaries did not assign their rights to reimbursement or to sue. The only obvious agreement is to allow Plaintiff to pursue an appeal and to communicate with Defendants in conjunction therewith. These forms do not create a material issue of fact with respect to Plaintiff's receipt of written assignments of benefits, especially when Plaintiff has admitted that it never received an actual assignment from the beneficiaries.

Defendants point, convincingly, to the deposition of Plaintiff's executive, Dr. Daniel Balda. Plaintiff's business model does not emphasize contact with the patient, and it appears that in most cases, the physician's office fills out the paperwork to enroll the patient in Plaintiff's cardiac monitoring service. (Balda Dep. 51:5–16.) The patient does not have to sign the enrollment form. (*Id.* at 52:15–17.) The form does not require the patient to make any representations or warranties. (*Id.* at 54:18–22.) When asked if patients ever sign a document that "[s]pecifically names Medicomp and assigns Medicomp the benefits of that patient's insurance policy," Dr. Balda answered, "No." (*Id.* at 60:15–20.) Finally, Dr. Balda admitted that Plaintiff never received permission from the patients to bill on their behalf, only from their physicians. (*Id.* at 68:17–24.) Based on this uncontradicted evidence, the Court concludes that there are no facts supporting Plaintiff's assertion that it possessed valid assignments of benefits from ERISA plan participants or beneficiaries. As a result, Defendants are entitled to summary judgment.

The Court expresses no opinion on the merits of Plaintiff's claim – it may well be that Defendants are obligated to pay for Plaintiff's cardiac monitoring service under the various ERISA plans. The Court is mindful of the policy considerations underlying the Eleventh Circuit's decision to extend derivative standing to medical providers, but the controlling precedent on the subject only allows a narrow extension of standing where there is evidence of a valid assignment from a plan participant or beneficiary. Absent such evidence, Defendants are entitled to summary judgment.

## IV.
## CONCLUSION

Based on the foregoing, it is ordered as follows:

1.    Defendants' Motion for Judgment on the Pleadings or, alternatively, for Summary Judgment (Doc. No. 73), filed April 1, 2013, is **GRANTED IN PART AND DENIED IN PART**.

2.    The Motion for Judgment on the Pleadings is **DENIED**; however, the Motion for

Summary Judgment is **GRANTED**.

3.    The Clerk is directed to **CLOSE** the case.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on July 22, 2013.

ANNE C. CONWAY
United States District Judge

- 9 -