[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11699

_____

D.C. Docket No. 1:18-cv-00027-JB-N
Bkcy. No. 17-bkc-01568-HAC-7


In Re:  JERRY DEWAYNE GADDY,

                                                                    Debtor.
_____

SE PROPERTY HOLDINGS, LLC,

                                                            Plaintiff - Appellant,

versus

JERRY DEWAYNE GADDY,

                                                            Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(September 29, 2020)

Before WILLIAM PRYOR, Chief Judge, GRANT, Circuit Judge, and ANTOON,[*] District Judge.

ANTOON, District Judge:

A Chapter 7 bankruptcy is intended to give the debtor a fresh start, free from debt.  The process usually entails liquidating the debtor's assets and applying the proceeds toward satisfaction of creditors' claims.  If all goes well for the debtor, the court will, in the end, discharge the outstanding debts.  But the Bankruptcy Code, in 11 U.S.C. § 523(a), exempts certain kinds of debts from discharge.

This is an appeal from an order rejecting a claim that a debt was not exempt from discharge under § 523(a).  SE Property Holdings, LLC ("SEPH") brought an adversary proceeding in Jerry Gaddy's Chapter 7 bankruptcy.  SEPH requested that the court declare Gaddy's debt to SEPH exempt from discharge under 11 U.S.C. § 523(a)(2)(A) and (a)(6) because Gaddy fraudulently conveyed his property, thwarting SEPH's efforts to collect the debt.  But the bankruptcy court determined that Gaddy had not fraudulently obtained money or property as required for exemption from discharge under § 523(a)(2)(A) and that Gaddy had not injured SEPH within the meaning of § 523(a)(6).  The court thus rejected SEPH's claims, granted Gaddy's motion for judgment on the pleadings, and dismissed the adversary proceeding.  SEPH now appeals the district court's

---

[*]Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

affirmance of the bankruptcy court's dismissal.  We affirm.

## I.  BACKGROUND

Gaddy's debt to SEPH arose from two business loans made in 2006 by SEPH's predecessor-in-interest, Vision Bank, to Water's Edge LLC.  The loans were made to fund a real estate development project in Baldwin County, Alabama. Gaddy, an investor in the project, personally guaranteed repayment of the entire first loan—$10 million—and $84,392.00 of the second loan.  In 2008, he reaffirmed those guaranties and increased his obligation on the first guaranty to $12.5 million.  About a year after the reaffirmances, several of the more than thirty guarantors began missing required capital contributions, and it became clear that the development project was in trouble.  The missed payments prompted the bank to send a letter to the guarantors warning of potential default.

In October 2009, less than two weeks after the bank's warning, Gaddy conveyed parcels of real property to a newly formed LLC, of which the initial members were Gaddy, his wife, and his daughter; Gaddy later conveyed his own membership interest in the LLC to his wife and daughter.  These were part of a series of conveyances of personal assets—including real property, cash, and business interests—that Gaddy made over the next five years to family members and entities that he controlled.

Water's Edge defaulted on both loans in 2010, and the bank demanded

3

payment from Gaddy as a guarantor.  Four months later, the bank sued Water's Edge, Gaddy, and other guarantors in an Alabama state court.  Meanwhile, Gaddy continued to transfer his assets.  In December 2014, SEPH, by then having been substituted for Vision Bank due to a merger, prevailed in the Water's Edge litigation.  The state court entered a judgment in favor of SEPH and against Gaddy for more than $9.1 million.  Gaddy made two more transfers of assets that same month.

Eventually, SEPH sued Gaddy and his wife in federal court to set aside Gaddy's transfers of property under the Alabama Uniform Fraudulent Transfer Act ("AUFTA").  After SEPH amended its complaint to add Gaddy's daughter and several business entities as defendants in the AUFTA case, Gaddy filed for bankruptcy.  This prompted SEPH to initiate the adversary proceeding in the bankruptcy court objecting to the discharge of its debt.  In its complaint, SEPH described Gaddy's allegedly fraudulent transfers and asserted they had damaged SEPH by "depriv[ing SEPH] of assets of Jerry Gaddy that could be used to satisfy the judgment entered in the Water's Edge Litigation."

SEPH's complaint requested that the bankruptcy court declare its Water's Edge judgment against Gaddy exempt from discharge under 11 U.S.C. § 523(a)(2)(A) and (a)(6).  In relevant part, these provisions state:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

4

. . . .
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

    (A) false pretenses, a false representation, or actual fraud . . . ; [or]

. . . .
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(2)(A), (a)(6).  SEPH urged the court to find that the debt was exempt from discharge under § 523(a)(2)(A) because Gaddy had fraudulently transferred assets to "hinder SEPH's collection."  And SEPH claimed that the debt was exempt under § 523(a)(6) because through his transfers of assets, Gaddy had "willfully and maliciously injured" SEPH or its property.

A month after answering SEPH's complaint, Gaddy filed a motion for judgment on the pleadings.[1]  Gaddy argued that SEPH's complaint failed to state a claim under either § 523(a)(2)(A) or § 523(a)(6) because he did not defraud SEPH in guarantying the loans and because his conveyances did not injure SEPH or its property.  In its response to Gaddy's motion, SEPH argued not only that the Water's Edge judgment debt was exempt from discharge but also that "any fraudulent transfer judgment SEPH obtains against Gaddy would be" exempt if, as SEPH claims, those transfers were made "with a willful and malicious intent."

---

[1] Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Federal Rule of Bankruptcy Procedure 7012(b) incorporates Rule 12(c) in adversary proceedings.

And during oral argument on Gaddy's motion, SEPH requested leave to amend its complaint to add allegations that Gaddy's conveyances resulted in a separate debt to SEPH that was not exempt from discharge.

The bankruptcy court granted Gaddy's motion for judgment on the pleadings and dismissed the adversary proceeding. The court found that SEPH's § 523(a)(2)(A) claim failed because SEPH did "not contend that the underlying debt from the guaranties was obtained by fraud or was anything other than a standard contract debt." And the court similarly rejected SEPH's § 523(a)(6) argument because "[t]he underlying debt is the result of personal guaranties, not any willful and malicious injury by Gaddy." Finally, the court found no basis for amendment of SEPH's complaint to add a claim that a new, separate, fraudulent transfer debt under the AUFTA was exempt from discharge, noting that SEPH had "not provided any Alabama law that [a] debtor/transferor who fraudulently transfers property is liable to a creditor for the value of the transferred property."

SEPH appealed the bankruptcy court's decision, and the district court affirmed, "agree[ing] with [the bankruptcy judge] for all the reasons articulated in his order." It is from that decision that SEPH now appeals.

## II.  STANDARD OF REVIEW

"Judgment on the pleadings is appropriate when material facts are not in dispute and judgment can be rendered by looking at the substance of the pleadings

6

and any judicially noticed facts." *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998). "We review legal determinations made by either the bankruptcy court or the district court *de novo*." *Crumpton v. Stephens* (*In re Northlake Foods, Inc.*), 715 F.3d 1251, 1255 (11th Cir. 2013). We also "review the legal significance accorded to the facts *de novo*." *Id*. And in reviewing a ruling on a motion for judgment on the pleadings, "we must accept all facts in the complaint as true and view those facts in the light most favorable to the plaintiff." *Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018). While the Bankruptcy Code protects creditors harmed by a debtor's "egregious conduct," statutory exemptions to discharge of debts are construed strictly against the creditor and liberally in favor of the honest debtor. *St. Laurent v. Ambrose* (*In re St. Laurent*), 991 F.2d 672, 680 (11th Cir. 1993) (quoting *In re Britton*, 950 F.2d 602, 606 (9th Cir. 1991)).

Generally, we review the denial of a motion for leave to amend a complaint for abuse of discretion. *Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1040 (11th Cir. 2006). But where the lower court denies leave to amend based on futility of the proposed amendment, we review that decision *de novo* because it is a "conclu[sion] that as a matter of law an amended complaint would necessarily fail." *Id.* (internal quotation marks omitted) (quoting *Freeman*

7

*v. First Union Nat'l*, 329 F.3d 1231, 1234 (11th Cir. 2003)).

## III.  DISCUSSION

On appeal, SEPH challenges the bankruptcy court's rulings that SEPH failed to state a claim that the Water's Edge judgment debt is exempt from discharge under § 523(a)(2)(A) or (a)(6).  It also challenges the court's ruling that the AUFTA does not support a claim against Gaddy based on a "new" debt created by the fraudulent transfers themselves.  We address these contentions in turn.

### A. The Water's Edge Debt Is Not Exempt From Discharge Under 11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) exempts from a debtor's discharge "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent *obtained by* . . . false pretenses, a false representation, or actual fraud."  11 U.S.C. § 523(a)(2)(A) (emphasis added).  That is, "it prevents discharge of 'any debt' respecting 'money, property, services, or . . . credit' that the debtor has fraudulently obtained."  *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998) (alteration in original).  The bankruptcy court and the district court both concluded that SEPH's § 523(a)(2)(A) claim failed because the loans that Gaddy guarantied were not "obtained by . . . false pretenses, a false representation, or actual fraud."  They were correct, and we reject SEPH's efforts to expand case law to encompass the circumstances presented by this case.

SEPH does not—and cannot—argue that Gaddy or the entity whose debt he

8

guarantied fraudulently obtained money or property from SEPH's predecessor.  A state court awarded SEPH a judgment on its ordinary breach of contract claim, and that judgment makes no findings of fraud.  The only fraud that SEPH alleges— Gaddy's conveyances of real and personal property—happened years after Gaddy incurred the debt by signing the guaranties.  The money that the bank loaned is obviously not traceable to those later conveyances.

SEPH nonetheless asserts that Gaddy's post-guaranty transfers of assets render the judgment debt exempt from discharge because Gaddy made those transfers to hinder its collection.  In doing so, SEPH relies largely on a strained interpretation of, and dicta in, the Supreme Court's 2016 decision in *Husky International Electronics, Inc. v. Ritz*, 136 S. Ct. 1581 (2016).  But *Husky* does not advance SEPH's position.

In *Husky*, the Supreme Court reviewed the ruling of the Court of Appeals for the Fifth Circuit that the "obtained by . . . actual fraud" language in § 523(a)(2)(A) requires a fraud that "involves a false representation to a creditor," 136 S. Ct. at 1585, something not typically present in the fraudulent transfer context.  Reversing the Fifth Circuit, the Supreme Court held that "[t]he term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Id.* at 1586.  In doing so, the Court reached the same conclusion the Seventh Circuit had reached sixteen years

earlier in *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000), the other case upon which SEPH heavily relies.

But the facts of *Husky* and *McClellan* are distinguishable, and their holdings are narrow. In both cases, someone other than the bankruptcy debtor initially owed a debt for which the bankruptcy debtor later became at least partially liable. In *Husky*, a corporation owed an ordinary debt to Husky. 136 S. Ct. at 1585. A corporate insider then became potentially personally liable to Husky under a Texas veil-piercing statute when he "drained [the corporation] of assets it could have used to pay its debts to creditors like Husky." *Id.* And in *McClellan*, the bankruptcy debtor's brother owed money on a loan. 217 F.3d at 892. The brother fraudulently transferred the creditor's security to his more-than-complicit sister, the debtor, who then became potentially liable to McClellan based on her role in the fraud. *See id.* at 892, 895. Because of the sister's fraud, depriving McClellan of his security interest, the sister's debt was exempt from discharge in her bankruptcy. *Id.* at 895.

Neither the Supreme Court nor the Seventh Circuit eliminated the requirement that for a debt to be exempt from discharge under § 523(a)(2)(A), the money or property giving rise to the debt must have been "obtained by" fraud, actual or otherwise. Instead, these Courts merely recognized the possibility that fraudulent schemes lacking a misrepresentation—including fraudulent transfers of

10

assets to avoid creditors—can satisfy the "obtained by" requirement in some circumstances. *See* 136 S. Ct. at 1589 (noting that "fraudulent conveyances are not wholly incompatible with the 'obtained by' requirement" of § 523(a)(2)(A), though "[s]uch circumstances may be rare"); *McClellan*, 217 F.3d at 895 (noting that although the debtor did not obtain the money by a fraud against her brother, she "would not have obtained a $160,000 windfall" but for fraud).[2]

SEPH seizes on this dictum and on the Supreme Court's comment that if a recipient of a fraudulent transfer "later files for bankruptcy, any debts 'traceable to' the fraudulent conveyance will be nondischarg[e]able under § 523(a)(2)(A)." *Husky*, 136 S. Ct. at 1589 (citation omitted). But these are not the facts of the case before us, and nothing in *Husky* suggests that a debtor's fraudulent transfer of assets renders an existing breach of contract judgment debt exempt from discharge under § 523(a)(2)(A). In both *Husky* and *McClellan*, fraudulent acts created or potentially created the very debts at issue. *See Husky*, 136 S. Ct. at 1585 (describing debtor's "drain[ing]" of corporate assets); *McClellan*, 217 F.3d at 895 ("The debt that McClellan is seeking to collect from [the bankruptcy debtor] (and prevent her from discharging) arises by operation of law *from her fraud*. That debt arose not when her brother borrowed money from McClellan but when she

---

[2] As to whether the "obtained by" requirement was satisfied under the facts of *Husky*, the Supreme Court remanded to the circuit court. 136 S. Ct. at 1589 n.3.

prevented McClellan from collecting from the brother the money the brother owed him." (emphasis in original)).  Here, SEPH's assertions fail not because Gaddy did not engage in "actual fraud" by conveying his assets[3] but because the Water's Edge loans were not "obtained by" fraud as required for exemption under § 523(a)(2)(A).

Again, the Water's Edge debt existed long before Gaddy began transferring his assets, and that debt is an ordinary contract debt that did not arise from fraud of any kind.  SEPH presents no binding authority that supports its assertion that a debtor's fraudulent conveyance of assets in an attempt to avoid collection of a preexisting debt renders that preexisting debt exempt from discharge under § 523(a)(2)(A).

B.    *The Water's Edge Debt Is Not Exempt From Discharge Under 11 U.S.C.*
*§ 523(a)(6)*

To qualify as exempt from discharge under § 523(a)(6), a debt must be a "debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  SEPH claims that the Water's Edge debt is exempt under this provision because SEPH was injured by Gaddy's fraudulent conveyances of his personal assets—conveyances that SEPH asserts

---

[3] We make no findings on whether Gaddy's transfers were indeed fraudulent.  We accept the allegations of SEPH's complaint as true in reviewing a ruling on a motion for judgment on the pleadings.  *See Sun Life Assurance*, 904 F.3d at 1207.

12

Gaddy made willfully and maliciously.  We are not persuaded; SEPH has not alleged cognizable "injury" under § 523(a)(6).

"A debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury."  *Kane v. Stewart Tilghman Fox & Bianchi, P.A.* (*In re Kane*), 755 F.3d 1285, 1293 (11th Cir. 2014) (quoting *Maxfield v. Jennings* (*In re Jennings*), 670 F.3d 1329, 1334 (11th Cir. 2012)).  And "'[m]alicious' means wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will."  *Id.* at 1294 (quoting *Maxfield*, 670 F.3d at 1334).

In focusing on the nature of Gaddy's conduct, SEPH skips an important step in its § 523(a)(6) analysis.  To be exempted from discharge under this provision, an obligation must be a "debt . . . *for* willful and malicious injury."  11 U.S.C. § 523(a)(6) (emphasis added).  As the Supreme Court has explained, "'debt for' is used throughout [§ 523(a)] to mean 'debt as a result of,' 'debt with respect to,' 'debt by reason of,' and the like."  *Cohen*, 523 U.S. at 220 (citing *American Heritage Dictionary* 709 (3d ed. 1992) and *Black's Law Dictionary* 644 (6th ed. 1990)).  In this case, the Water's Edge debt is a contract debt that was incurred long before the challenged conveyances.  SEPH's complaint in the adversary proceeding did not allege that the Water's Edge debt was the "result of," "with respect to," or "by reason of" Gaddy's tortious conduct.  The only misconduct

13

alleged by SEPH pertains to Gaddy's fraudulent conveyances of assets.  But those conveyances occurred years after Gaddy became indebted to SEPH for the Water's Edge guaranties, and the conveyances are not traceable to that debt, which arose from an ordinary breach of contract.

SEPH argues that it should prevail under *Maxfield*, in which this Court affirmed a ruling that a fraudulent transfer judgment was exempt from discharge under § 523(a)(6).  But as the bankruptcy court correctly concluded, *Maxfield* is distinguishable because the debt at issue there—the debtor's joint and several liability for part of her ex-husband's preexisting debt—arose from the debtor's participation as a conspirator in the fraudulent transfer of property; it thus was "for willful and malicious injury" and qualified for exemption under § 523(a)(6). *Maxfield*, 670 F.3d at 1331–34.  In contrast, the Water's Edge debt arose from breach of guaranty, not from a "willful and malicious injury."

We are not persuaded by SEPH's argument that actions taken by a debtor after a debt is incurred, even if in an effort to thwart a creditor's collection efforts by fraudulently conveying assets, create a separate injury for the purposes of § 523(a)(6).  The Water's Edge debt—incurred long before Gaddy's conveyances of assets—was not "for willful and malicious injury" to SEPH or its property, and SEPH's § 523(a)(6) claim that its Water's Edge judgment is exempt from discharge fails as a matter of law.

14

*C. The Bankruptcy Court Correctly Denied Leave to Amend Because of the Futility of SEPH's Proposed Amendment Under the AUFTA*

We now turn to the issue that SEPH belatedly raised in the bankruptcy court. SEPH contends that Gaddy's fraudulent transfers of assets gave rise to a new debt to SEPH under the AUFTA—separate from the Water's Edge judgment—that qualifies as exempt from discharge under both § 523(a)(2)(A) and § 523(a)(6). Although SEPH did not rely on this theory in its adversary complaint, during oral argument in the bankruptcy court SEPH requested leave to amend to specifically add it as a basis for relief. Under this alternative approach, SEPH argues that the transfers resulted in Gaddy becoming indebted to SEPH for an amount equal to the value of the assets conveyed. These debts, SEPH maintains, arise from "actual fraud" under § 523(a)(2)(A) and were "for willful and malicious injury" within the meaning of § 523(a)(6). The bankruptcy court rejected the proposed amendment on the view that Alabama law would not permit recovery against a fraudulent transferor. We also reject the proposed amendment, though for a different reason. We conclude that Alabama law would not permit the double recovery SEPH seeks.

There can be no issue as to dischargeability unless a debt or potential debt exists. Although there is no dispute that Gaddy owes the Water's Edge debt—which, as discussed earlier, did not arise from fraud or willful and malicious injury—SEPH has not established a basis for a "fraudulent transfer debt" owed or potentially owed by Gaddy to SEPH.

15

The AUFTA specifies the remedies available to creditors when a debtor

fraudulently transfers property:

> (a) In an action for relief against a transfer under this chapter, the remedies available to creditors . . . include:
>
>> (1) Avoidance of the transfer to the extent necessary to satisfy the creditor's claim;
>>
>> (2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by any applicable provision of any other statute or the Alabama Rules of Civil Procedure;
>>
>> (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure,
>>
>>> a. An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
>>>
>>> b. Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
>>>
>>> c. Any other relief the circumstances may require.

Ala. Code § 8-9A-7(a).  SEPH relies on the "[a]ny other relief the circumstances

may require" language of § 8-9A-7(a)(3)(c) to argue that it is entitled to a money

judgment against Gaddy in the amount of the fraudulent transfers, and it relies on

11 U.S.C. § 523(a)(2)(A) and § 523(a)(6) to argue that this judgment is exempt

from discharge.

Generally, Alabama permits only one recovery for a given harm.  *Braswell*

*v. ConAgra, Inc.*, 936 F.2d 1169, 1173–74 (11th Cir. 1991); *see also Steger v.*

16

*Everett Bus Sales*, 495 So. 2d 608, 609 (Ala. 1986).  Yet SEPH seeks a new judgment for the same debt.  It already has a judgment against Gaddy for the unpaid Water's Edge guaranties.  It now seeks a second judgment entitling it to the same damages.  SEPH asserted below no independent, freestanding harm from the fraudulent transfers themselves; it complained only that the transfers kept it from collecting the underlying debt.

Attempting to support its double-recovery theory, SEPH directs our attention to *Johns v. A.T. Stephens Enterprises, Inc.*, 815 So. 2d 511 (Ala. 2001).  There, the Supreme Court of Alabama affirmed a jury's award of compensatory damages under § 8-9A-7(a)(3)(c) on a conspiracy-to-defraud claim.  *Id.* at 516–17.  But *Johns* is not helpful to SEPH's argument.  That case involved the plaintiff's lease of trucks to a corporate defendant.  The jury awarded compensatory damages on plaintiff's conspiracy claim against that defendant and conspiring codefendants for the plaintiff's lost profits—a harm separate from the underlying debt.  *Id.*; *see also A.T. Stephens Enters., Inc. v. Johns*, 757 So. 2d 416 (Ala. 2000) (prior appeal providing background facts).  Here, by contrast, SEPH asserts no harm from the fraudulent transfers other than its inability to collect the underlying debt.  *Johns* offers no support for that theory of recovery because it does not change the principle that "Alabama law bars double recovery of compensatory damages for a fraud claim and a contract claim based on a single transaction."  *Braswell*, 936

17

F.2d at 1173.

SEPH now also asserts that it could potentially recover punitive damages, attorney's fees, lost profits, or consequential damages on its fraudulent transfer claims against Gaddy. However, not only are these claims vague, but also SEPH did not raise these points before the bankruptcy court. We therefore decline to address them. *See JWL Entm't Grp., Inc. v. Solby+Westbrae Partners* (*In re Fisher Island Invs., Inc.*), 778 F.3d 1172, 1193–94 (11th Cir. 2015).

For these reasons, we conclude that the bankruptcy court correctly determined that SEPH was not entitled to leave to amend its adversary complaint because such amendment would have been futile.

## IV.  CONCLUSION

Accordingly, we affirm the judgment of the district court.